W. JONES, Justice,
dissenting.
I respectfully dissent from the majority Opinion in the present case on two grounds. First, this is not a “design immunity” case. Second, even if it were, I would overrule Leliefeld v. Johnson, 104 Idaho 357, 659 P.2d 111 (1983), holding that design immunity is perpetual, as that decision was based on poor legal reasoning and has proven to be unwise as a matter of policy.
This case is not and never has been a “design immunity” case. The majority concedes that, under Leliefeld failure-to-warn claims are not subject to “design immunity” *368 pursuant to I.C. § 6-904(7). This view is in accord with other jurisdictions interpreting similar statutes. See State v. Kallio, 92 Nev. 665, 557 P.2d 705, 706 (1976) (remedying hazardous conditions or warning of such conditions are alternative duties). Here, it is absolutely indisputable that there were ample allegations in the Complaint of a failure to warn. Even under the majority’s interpretation, Woodworth’s claim should not have been thrown out. Furthermore, I would hold that this is a claim based not on the “design” of the highway or any subsequent improvements, but rather on the failure to make such improvements at all.
Although the Complaint mentions in a preliminary paragraph that the State had a duty to design the highway, it also alleges in paragraph 5 that “at all times material to this action ITD was statutorily obligated by Idaho Code § 40-313(1) to ‘erect and maintain, whenever necessary for public safety and convenience, suitable signs, markers, signals and other devices to control, guide and warn pedestrians and vehicular traffic ... travel-ling upon the state highway system.’ ” (Emphasis added.) This paragraph clearly alleged a duty to warn mandated by statute, which the State Legislature would not do if indeed the State were immune from such duties. The Complaint further alleged in paragraph 8 that the crossing involved in this accident had poor lighting, lacked traffic control devices, warnings or markings and, together with the thirty-five-mile-per-hour speed limit, was hazardous to public safety. It further alleged that ITD was fully aware of multiple occasions before October 29, 2007 that pedestrians using the crossing were struck and seriously injured by motor vehicles, resulting in accident reports duly filed with the ITD. It also alleged a petition was filed by local residents seeking the installation of suitable traffic control devices to promote safety. The Complaint further alleged that the ITD breached its statutory duties, which were enacted by the Idaho legislature to promote safety of members of the public crossing state highways, all of which proximately caused plaintiffs brain damages and other injuries. In short, the Complaint in this case clearly alleged a duty to warn and statutory and common law negligence claims for personal injury resulting in damages to the plaintiff totally unrelated to any design issues.
Somewhere along the line the matter got twisted by the State and court into a “design immunity claim” resulting in a motion for summary judgment by ITD seeking the immunity provided by the Idaho Tort Claims Act.[6] Although plaintiff argued that he was not contesting the immunity of ITD for the initial design of the highway, the State nevertheless persisted that his claims “arise out of the ‘plan or design’ for the construction or improvement of a state highway.” The case also focused on plaintiffs argument that the ITD should have implemented a traffic engineering study of the intersection. That claim, however, was not a cause of action, but rather simply an argument that the ITD should have performed some study to determine what it should do to comply with its obligations under statutory and common law to maintain safe public roadways pursuant to law. The Complaint did not allege that the study was a mandatory duty in and of itself, but was offered only as a suggestion as to what could likely be done to determine how to improve safety at this particular intersection. The district court gave lip service to plaintiffs argument that ITD “failed to use ordinary care to carry out its responsibilities for management and oversight of the subject segment of 11th Avenue North,” but it focused entirely upon the basis of the State’s motion for summary judgment, which was design immunity under IC § 6-904(7). The court ignored completely the common law negligence claim and statutory duties which the Complaint clearly alleged were breached. Again, this is not and never has been a design immunity case.
The majority of this Court likewise joins the design immunity bandwagon. Nothing is ever said about the fact that this is a duty to warn and common law negligence case as well as a claim for breach of statutory duties imposed by the Legislature on ITD.
*369 In opposing the State’s motion for summary judgment, plaintiff pointed out that within a few weeks after plaintiff was injured, an engineering firm recommended to Nampa’s public works director the installation of a new crosswalk with pedestrian-actuated (push button) in-pavement flashers, an adjacent post-mounted sign, and amber beacons. The letter also noted that nine people in the last decade had been injured in the crosswalk and that a lighted crosswalk had long been anticipated by residents in the area. None of those matters are matters of “design”. They are at most matters of improvements or safety measures in the nature of signage and warning devices. The plaintiffs opposition to ITD’s motion for summary judgment was supported by a report from an expert engineer who opined that this particular intersection, based on recognized engineering standards, was not reasonably safe for pedestrian crossings on the date of the accident. He further opined that it could be improved by installation of a median island and an advance warning beacon system.
Plaintiffs opposition to ITD’s motion for summary judgment at the very least raised a genuine issue of material fact regarding whether ITD breached its duty to warn of dangers of which it was clearly aware and its common law and statutory duties resulting in serious injury to the plaintiff. Design immunity is totally irrelevant in this case because the original design of the highway was never questioned.
However, even if this were a design immunity case, I would overrule the holding in Leliefeld, supra, that design immunity is perpetual. I was not on the Court at the time of the Leliefeld decision and, if I were, I would have dissented. Even at the time Leliefeld was decided, the precedent on which it relied had been reversed by the California Supreme Court with these emphatic words:
[Djesign immunity persists only so long as conditions have not changed. Having approved the plan or design, the governmental entity may not, ostrich-like, hide its head in the blueprints, blithely ignoring the actual operation of the plan. Once the entity has notice that the plan or design, under changed physical conditions, has produced a dangerous condition of public property, it must act reasonably to correct or alleviate the hazard.
Baldwin v. State, 6 Cal.3d 424, 99 Cal.Rptr. 145, 491 P.2d 1121, 1127 (1972). I find myself in wholehearted agreement with Justice Bistline, who, in his dissent in Leliefeld, lamented that “Idaho litigants are plagued now and henceforth with overruled California case law which is not visited upon Californians, that is, unless they are foolish enough to travel [on highways] in Idaho.” 104 Idaho at 381, 659 P.2d at 135. I am also persuaded by the following commentary from a New York court on the question of whether design immunity should be perpetual:
In the area of traffic design engineering, a municipality will generally be accorded qualified immunity from liability arising out of its highway planning decisions. A municipality is entitled to qualified immunity where a governmental planning body has entertained and passed on the very same question of risk as would ordinarily go to the jury. However, a municipality may be held liable if, after being made aware of a dangerous traffic condition, it does not undertake an adequate study to determine what reasonable measures may be necessary to alleviate the condition, or, having determined what reasonable measures were necessary, it unjustifiably delays in taking them. In addition, after the municipality implements a traffic plan it is under a continuing duty to review its plan in the light of its actual operation.
Turturro v. City of New York, 77 A.D.3d 732, 908 N.Y.S.2d 738, 740-41 (2010) (emphasis added, citations and quotation marks omitted).
I firmly believe that the design immunity provided in I.C. § 6-904(7) was never intended to be perpetual. It is impossible for me to believe that the Legislature intended that once the highway is designed it is forever hallowed. If it did so intend, why would it enact statutes such as I.C. § 40-313(1) requiring the State to erect signage and warning devices to warn pedestrians and traffic of dangerous conditions? This particular stretch of highway was designed in 1954. *370 Now, nearly sixty years later, the area surrounding this highway has dramatically changed. What was once a sleepy rural town is now a busy city with far heavier traffic. Is the State under no obligation to review the safety of a roadway, even after the passage of decades, massive changes in the surroundings, and a litany of deaths? What if a shopping center, a school, or a hospital were built in the area? I simply cannot countenance a rule that would absolve the State of any duty under these circumstances, for all eternity. A highway at some point can clearly become deficient, inadequate or even extremely hazardous due to changed conditions, and therefore require improvements. To say as the. district court and this Court seem to say, that the State has no duty to take any further action with respect to warnings, upgrades, crossing markers, lighting, speed limit, or any other safety precaution simply because the original design was acceptable sixty years ago is incomprehensible. I for one cannot accept that reasoning. I therefore would overrule Leliefeld, even if this were a design immunity case, which I have already stated it is not. I simply cannot agree with the decision of the district court or the majority here that the design immunity of I.C. § 6-904(7) protects the State from the claims in the present case for failure to warn or provide safety measures at this particular crossing.
Although the district court found that the High Accident Location (“HAL”) Program was applicable to this case, in my opinion it is irrelevant. No showing is made by the State in its motion for summary judgment that its inability to make any safety improvements whatsoever to this location was prohibited by budget constraints. Indeed, there was no evidence relating to the IDL’s budget whatsoever. Although this is merely an alternative argument, it in no way affects my conclusion that this case should be remanded to allow Woodworth an opportunity to prove the IDL’s negligence and obtain any damages to which he is entitled.

. I.C. §§ 6-901 to -929.